# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY MILLION, | NO. EDCV 09-1435 AGR |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Beverly Million filed this action on August 13, 2009. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on August 27 and September 18, 2009. (Dkt. Nos. 8, 9.) On April 15, 2010, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court affirms the decision of the Commissioner.

///
///
///
///

# I.

# PROCEDURAL BACKGROUND

On October 23, 2003, Million filed an application for Title XVI disability benefits. Administrative Record ("AR") 9. The application was denied initially, on reconsideration, and by an Administrative Law Judge ("ALJ") in a decision dated October 12, 2006. *Id.* On November 9, 2006, Million filed an application for supplemental security income benefits, alleging a disability onset date of October 9, 2003. AR 100. The application was denied initially and upon reconsideration. *Id.* Million requested a hearing before an ALJ. AR 123-26. On June 13, 2008, the ALJ conducted a hearing at which Million, two medical experts and a vocational expert testified. AR 29-61. On July 17, 2008, the ALJ issued a decision denying benefits. AR 100-07. On August 6, 2008, Million requested that the Appeals Council review the decision denying benefits. AR 163. On August 22, 2008, the Appeals Council remanded the case. AR 166. On January 22, 2009, the ALJ conducted a hearing at which Million gave further testimony. AR 62-81. On March 31, 2009, the ALJ issued a decision denying benefits. AR 6-20. On June 3, 2009, the Appeals Council denied Million's request for review. AR 1-3. This action followed.

# II.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada,* 60 F.3d at 523. In

determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

The ALJ found that Million had the severe impairments of right eye blindness, chronic anemia, and post-traumatic stress disorder. AR 11. Million had the residual functional capacity ("RFC") to perform light work "except she can occasionally climb stairs and ramps but cannot climb ladders, ropes, or scaffolds. She is able to frequently bend and stoop, and she is able to occasionally crouch and kneel. [She] is precluded from balancing or walking on uneven terrain and she should avoid working at unprotected heights, around dangerous machinery, and near pools of water. [She] cannot perform work that requires binocular vision or exact vision for small objects. Mentally, [she] can perform moderately detailed, moderately complex, non-public work that requires only occasional (up to 1/3 of the day) non-intense contact with supervisors and coworkers." AR 13.

///

///

Million could not perform her past relevant work, but "there are jobs that exist in significant numbers in the national economy that [she] can perform," such as garment sorter, cleaner, and bottle packer. AR 19-20.

### C. Treating Physician

Million argues that the ALJ failed to comply with the terms of the Appeals Council's August 22, 2008 remand order by disregarding the opinion of her treating physician, Dr. Gomer. JS 3-6.

Million's argument that the ALJ failed to comply with the Appeals Council's remand order is misdirected. After the Appeals Council remanded the matter (AR 165-67), the ALJ issued a new hearing decision on March 31, 2009. AR 9-20. The Appeals Council denied Million's request for review of that decision and designated the ALJ's decision as the final decision of the Commissioner. AR 1-3. Federal courts have jurisdiction to review only the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Tyler v. Astrue,* 305 Fed. Appx. 331, 332 (9th Cir. 2008) ("The district court properly declined to evaluate whether the ALJ's second decision satisfied the demands of the Appeals Council's remand . . . . [F]ederal courts only have jurisdiction to review the final decisions of administrative agencies. When the Appeals Council denied review of the ALJ's second decision, it made that decision final, and declined to find that the ALJ had not complied with its remand instructions.") Accordingly, this court will evaluate the ALJ's opinion as the final decision of the Commissioner.[1]

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by

---

[1] Million's citation to *Ruiz v. Apfel*, 24 F. Supp. 2d 1045, 1050 (C.D. Cal. 1998), is inapposite. That decision addressed proceedings on remand from a district court order.

4

substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 632 (citations and quotations omitted). When the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors, including the following: (1) length of the treatment relationship and frequency of examination;[2] (2) nature and extent of the treatment relationship;[3] (3) the amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4) consistency with record as a whole; and (5) the specialty of the physician providing the opinion. *See id.* at 631; 20 C.F.R. § 404.1527(d)(1)-(6).

The ALJ considered Dr. Gomer's opinion on April 17, 2008, that Million is disabled and unable to work because she suffers from amnesia, dizziness, and loss of vision. AR 16, 18, 385-86. The ALJ discounted Dr. Gomer's opinion based on the lack of supporting objective evidence and lack of consistency with the record as a whole.[4] AR 19.

An ALJ may properly discount a treating physician's opinion that is not supported by clinical findings. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th

---

[2] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(d)(2)(i).

[3] "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(ii).

[4] Million testified that Dr. Gomer's opinion letters were written for her son's attorney so that "he could be there for me and he could help me." AR 50. The ALJ observed that Dr. Gomer's opinion was not consistent with social security disability requirements. AR 19. A treating physician's statement that a claimant is disabled does not establish disability under social security requirements. The ultimate disability determination is reserved to the Commissioner. 20 C.F.R. § 416.903; SSR 96-5p, 1996 WL 374183 at *2; *see also* 20 C.F.R. § 416.927(e)(1) (2010) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

5

Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ need not accept treating physician's opinion that is inadequately supported by clinical findings). The ALJ reviewed Dr. Gomer's treatment records, which indicated fracture of the nasal bones. AR 16-17, 380-83. Dr. Gomer referred her to Dr. Jeffries "for evaluation of cervical strain after assault with vertigo and back pain." AR 387. The ALJ considered Dr. Jeffries' records dated March 12, 2008. AR 16, 387-88. Dr. Jeffries stated that "[e]tiology of vertigo is disruption of the otolith in the inner ear following head trauma, this is called benign positional vertigo and can be treated with Canalith repositioning maneuver-Epley." AR 387. The ALJ found that Canalith repositioning maneuver-Epley and medication improved her condition. AR 14, 16, 91. The ALJ found "no objective evidence that [dizziness] has resulted in any significant problems." AR 14. The ALJ concluded that Million has some dizziness at times, but that her condition has been "generously considered within the delineated residual functional capacity with no objective evidence to support further restrictions." *Id.* There are no objective findings in Dr. Gomer's treatment records regarding amnesia or vision loss.

A lack of consistency with the record may be used to discount a treating physician's opinion. *Orn*, 495 F.3d at 631-32. With respect to dizziness, the ALJ noted that Million's gait was steady with normal neurological examinations. AR 15. The ALJ noted Million first sought mental health treatment for memory loss and forgetfulness in December 2008 after her second application for disability benefits. AR 15, 451-60. Her memory was found to be within normal limits. AR 452. She was seen once and then stopped treatment. AR 15. With respect to Million's vision, the ALJ noted that her vision, with glasses, was 20/70 in the right eye, left eye and both eyes. AR 14, 306. Based upon the longitudinal medical records, the ALJ found "no significant changes in [Million's] vision and she has not required further surgeries as a result of her vision or facial injuries." AR 14. The examining physician, Dr. Lin, found that Million had impaired peripheral

vision in the right eye. AR 303. However, she wore prescription glasses and was able to walk around Dr. Lin's office without assistance. AR 17, 305. The ALJ concluded that while Million had "some loss of peripheral vision," her condition had been "generously considered within the delineated residual functional capacity with no objective evidence to support further restrictions."

The ALJ also relied upon the opinions of the examining physicians. AR 17. An examining physician's opinion constitutes substantial evidence when, as here, it is based on independent clinical findings. *Orn*, 495 F.3d at 631. Dr. Lin examined Million's vision and diagnosed impaired peripheral vision in the right eye. AR 303, 306. Million's neurological examination was normal; she had good tone bilaterally, with good active motion and 5/5 strength in all extremities; her gait was within normal limits, and she was able to get into and out of the chair, on and off the examining table, and ambulate without assistance. AR 303-05. Dr. Lin assessed fewer restrictions than the ALJ. AR 305. Examining psychiatrist Dr. Rodriguez found that Million's made good eye contact and had good interpersonal contact, had coherent and organized thought processes, had normal speech rate and tone, and was of at least average intelligence. AR 320. Dr. Rodriguez opined that Million could "understand, remember, and carry out <u>simple</u> one or two-step job instructions," and could perform "detailed and <u>complex</u> instructions." AR 17, 323 (emphases in original). She was slightly limited in concentration, persistence and pace; interaction with supervisors, co-workers and the public; and attendance and safety. AR 323. The ALJ also relied upon non-examining physicians (AR 17), whose opinions constitute substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

The ALJ provided specific and legitimate reasons supported by substantial evidence in the record for discounting Dr. Gomer's opinion.

///

### D. Examining Psychiatrist's Opinion

Million argues that the ALJ improperly ignored the December 12, 2008 opinion of Dr. Enge, an examining psychiatrist. Dr. Enge saw Million only once. Dr. Enge found that Million's appearance, perceptual process, and thought content were within normal limits. AR 452. Her memory was within normal limits and she was oriented in all spheres. *Id.* Her behavior was agitated, her speech was pressured, her mood was tearful, angry and irritated, and her thought process was tangential. *Id.* Dr. Enge diagnosed post traumatic stress disorder and a Global Assessment of Functioning ("GAF") score of 49. *Id.*

The ALJ considered Dr. Enge's opinion and stated that while Million has some symptoms, "I find they have been generously considered within the delineated residual functional capacity with no evidence to support further restrictions."[5] AR 15. The ALJ's residual functional capacity assessment limited Million to performing "moderately detailed, moderately complex, non-public work that requires only occasional (up to 1/3 of the day) non-intense contact with supervisors and coworkers." AR 13, 18.[6]

Million argues the ALJ erred in not expressly discussing Dr. Enge's assessment that Million's GAF score was 49. A GAF score is not determinative of mental disability for Social Security purposes. *See* 65 Fed. Reg. 50,765, 50,764-65 (Aug. 21, 2000) (to be codified at 20 C.F.R. pts. 404 & 416) ("[the GAF scale] does not have a direct correlation to the severity requirements in our

---

[5] The ALJ did discount the credibility of Million's subjective allegations. Million does not challenge the ALJ's credibility findings. AR 15.

[6] Dr. Rodriguez stated that if treated for her PTSD, Million could "easily recover within twelve months." AR 17, 323. As discussed above, Dr. Rodriguez opined that Million could understand, remember, and carry out simple one or two-step instructions, and detailed and complex instructions. AR 17, 323. She was slightly limited in concentration, persistence and pace; interaction with supervisors, co-workers and the public; and attendance and safety. AR 17, 323. The medical expert, Dr. Glassmire, also found that Million had PTSD, and testified she had moderate limitation in social functioning and mild limitations in concentration, persistence or pace. AR 17, 40-43.

mental disorder listings."). The failure to reference a GAF score, standing alone, does not constitute error. *See McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (citing 65 Fed. Reg. 50746, 50765); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (ALJ did not err in failing to mention GAF score).[7]

### E. Whether Million Met or Equaled a Listing

At step three of the sequential analysis, the claimant bears the burden of demonstrating that her impairments are equivalent to a listed impairment that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step." *Id.* at 141; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

"The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (citation omitted). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An

---

[7] The two district court cases that Million cites are distinguishable. Million cites *Castaneda v. Apfel*, 2001 WL 210175 (D. Or. Jan. 18, 2001), for the proposition that a GAF of 45 "is indicative of a disabling level of impairment." JS 18. The decision was describing the opinion of a psychologist who examined the claimant who had "very elevated" scales on the MMPI as well as a history of physical and sexual abuse, past attempts to kill herself and her children, and suicidal ideation. The psychologist opined that vocational rehabilitation would not be appropriate until the claimant could handle daily responsibilities on a regular basis. *Id.* at *3. Similarly, in *White v. Astrue*, 2008 WL 5427642 at *2 (C.D. Cal. Dec. 31, 2008), a treating psychiatrist opined that the claimant was "seriously limited" in several areas and that her mental impairments would cause her to miss work more than four days per month. By contrast, Dr. Enge did not express an opinion as to Million's functional limitations.

9

impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (emphasis in original).

"To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is *not* listed, then to the listed impairment 'most like' the claimant's impairment." *Tackett*, 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 404.1526. "'Medical equivalence must be based on medical findings.' A generalized assertion of functional problems is not enough to establish disability at step three." *Tackett*, 180 F.3d at 1100 (citation omitted).

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

The ALJ found that Million "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." AR 12. The ALJ relied upon the medical expert Dr. Nafoosi and state agency physician opinions. AR 12, 17-18, 33-34, 325-37, 340-49. The ALJ found that Million's mental impairment does not meet or medically equal Listing 12.04. *Id.*

Million does not offer evidence that she meets or medically equals a listed impairment. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (claimant did not satisfy burden to prove that he equaled a listing when he "offered no theory, plausible or otherwise, as to how his [impairments] combined to equal a listed impairment [. . . ] [n]or has he pointed to evidence that shows that his combined impairments equal a listed impairment."). There is no opinion from a medical source that she meets or equals a listing. Although Million argues that Dr. Gomer diagnosed amnesia, dizziness and loss of vision, "[a] generalized assertion of

///

functional problems is not enough to establish disability at step three." *Tackett*, 180 F.3d at 1100

Million refers to Listing 2.00.[8] JS 18-20. To meet the definition of statutory blindness, Listing 2.00 requires having "visual acuity of 20/200 or less in the better eye with the use of a correcting lens." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.00(A)(2); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.02 ("Loss of visual acuity. Remaining vision in the better eye after best correction is 20/200 or less."). To meet the definition of statutory vertigo, Listing 2.00 requires having vertigo associated with disturbances of labyrinthine-vestibular function, including Meniere's disease, characterized by tinnitus and hearing loss. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 2.00(C), 2.07. "The diagnosis of a vestibular disorder requires a comprehensive neuro-otolaryngologic examination with a detailed description of the vertiginous episodes, including notation of frequency, severity, and duration of the attacks. Pure tone and speech audiometry with the appropriate special examinations, such as Bekesy audiometry, are necessary. Vestibular functions is assessed by positional and caloric testing, preferably by electronystagmography." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.00(C)(3).

There is no evidence in the record that Million had vision in the better eye after best correction of 20/200 or less, or had vertigo associated with disturbance of labyrinthine-vestibular function, characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. As the ALJ noted, Million's vision, with glasses, was 20/70 in the right eye, left eye and both eyes. AR 14, 306. Dr. Jeffries diagnosed benign paroxysmal peripheral vertigo, whose etiology was disruption of the otolith in the inner ear and whose treatment is Canalith repositioning maneuver-Epley. AR 16, 387. Dr. Jeffries found no evidence of difficulty with speaking with normal facial strength. AR 16, 387. *See*

---

[8] Dr. Nafoosi considered Listing 2.00. AR 34. Dr. Nafoosi precluded Million from jobs requiring depth perception, binocular vision. *Id.*

11

*Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("It is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments.") . The ALJ did not err.

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: March 29, 2011

ALICIA G. ROSENBERG
United States Magistrate Judge